

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

GLORIA TURNAGE, POLLY LARIMER,      :
CARSHENA JACKSON, SAM FORBES,      :
MICHELLE CAMPBELL, SHARON HOLMES,:
BECKY NICHOLDS, SUSAN FOLLEY,      :
FELIX GILLISON, JR.,      :
LAWRENCE MWETHUKU, JAMES HAYES,   :
JAZMINE HAYES, CHEOLIECES SHANNON  :
GLORIA CUNNINGHAM, HERBERT WHITE,:
CHERILE DEVRIES, ALLEN HONESTY,      :
on behalf of themselves and all others similarly   :
situated,      :
      :
                              Plaintiffs   :
v.      :
      :
CLARITY SERVICES, INC.,      :
15550 Lightwave Drive, Suite #350      :
Clearwater, Florida 33760      :
      :
Serve: via the Secretary of the Commonwealth   :
      :
                              Defendant.   :

Civil Action No. 3:14-CV-760

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiffs, by counsel, and for their Complaint against the Defendant, they allege as follows:

## PRELIMINARY STATEMENT

1.      This is an action brought pursuant to 15 U.S.C. § 1681, *et seq.* (the Fair Credit Reporting Act or "FCRA"). Plaintiffs allege both individual and class claims.

2.      Defendant Clarity Services, Inc. ("Clarity"), a consumer reporting agency and a user of consumer reports focused mostly on marketing to online and other payday lenders,

1

engages in systematic and unlawful practices in violation of the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*, which restricts access and use of consumer reports.

3.     To that end, Plaintiffs Turnage, Larimer, Carshena, Forbes, Campbell, Nicholds, Gillison, Mwethuku, James Hayes, and Honesty bring class claims against Clarity under §§ 1681b(a) and 1681e(a) because, as a matter of common practice, it furnishes consumer reports to other companies without a permissible FCRA purpose.  Through its intended and/or reckless procedures, Clarity allows and facilitates the unlawful access of consumers' credit reports to certain lead generators and marketers of predatory financial service products. Further, amongst other things, consumer reporting agencies are required to make a reasonable effort to verify the identity of prospective users and to certify the uses by such prospective user prior to furnishing a user a consumer report. Clarity instead facilitates the efforts of known lead generators who merely seek Clarity's data to resell it to other entities unknown and never disclosed to Clarity. These ongoing intrusions were either intentional, or Clarity cared so little about the duties owed under the FCRA that its conduct was carried out with reckless disregard, which gives rise to a willful violation.

4.     Plaintiffs Turnage, Larimer, Campbell, Nicholds, Mwethuku, Hayes, Cunningham, White, DeVries, and Honesty also allege class claims pursuant to § 1681b(f) because Clarity not only furnishes consumer reports to other companies without a permissible purpose in violation of § 1681b(a), but it also *repeatedly obtains* consumer reports from Experian Information Solutions, Inc., another consumer reporting agency, without a permissible purpose established by § 1681b(a), and often minutes after obtaining a previous report ion that same consumer.

5.     Similarly, Clarity – as a "reseller" fails to comply with § 1681e(e), which requires substantive disclosures by Clarity to Experian for each report obtained for resale identifying the actual "end-user" of the information and that specific end-user's permissible purpose for each specific report resold, and which requires Clarity to have in place reasonable procedures "designed to ensure that the report (or information) is resold by the person only for a purpose for which the report may be furnished under § 1681b.

6.     Moreover, Defendant violates § 1681g(a) when it obtains consumer reports from Experian as it fails to identify Experian as a source of information in the consumer reports that it furnishes directly to consumers.  Clarity not only failed to disclose the sources of information in violation of § 1681g(a)(2), but it also failed to clearly and accurately disclose to certain Plaintiffs all of the information in the Plaintiffs' files at the time of their request for their file in violation of § 1681g(a)(1). Specifically, the consumer reports furnished by Clarity use codes to summarize the information in the consumer's file (such as payment history or delinquent status). These codes are unintelligible without documentation defining any of the codes to enable the consumer to understand the contents of the information in their reports. More often then not, Clarity failed to enclose it "Reference Table" with a consumer disclosure so that a consumer can clearly and accurately understand the information in their file. Accordingly, Plaintiffs Turnage, Jackson, Larimer, Campbell, Holmes, Nicholds, Mwethuku, James and Jazmine Hayes, Shannon, Cunningham, Folley, Forbes, White, DeVries, and Honesty allege, on an individual basis, that this conduct violates § 1681g(a).

7.     Finally, Plaintiffs Turnage, Larimer, Jackson, and Hayes allege individual claims against Clarity under § 1681i based on its failure to conduct a reasonable investigation when

3

these Plaintiffs disputed inaccurate information appearing in their credit reports and Clarity failed to conduct an investigation into their disputes.

## JURISDICTION

8.     This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a majority of the Plaintiffs reside in this District and Division and significant part of the Plaintiffs' claims occurred in Virginia.

## PARTIES

10.     Plaintiff Gloria Turnage ("Ms. Turnage") is a natural person who resides in Virginia and in this District and Division. Ms. Turnage is a consumer as defined by the FCRA at §1681a(c).

11.     Plaintiff Polly Larimer ("Ms. Larimer") is a natural person who resides in Virginia and in this District and Division. Ms. Larimer is a consumer as defined by the FCRA at §1681a(c).

12.     Plaintiff Carshena Jackson ("Ms. Jackson") is a natural person who resides in Virginia and in this District and Division. Ms. Jackson is a consumer as defined by the FCRA at §1681a(c).

13.     Plaintiff Michelle Campbell ("Ms. Campbell") is a natural person who resides in Virginia and in this District and Division. Ms. Campbell is a consumer as defined by the FCRA at §1681a(c).

14.     Plaintiff Sharon Holmes ("Ms. Holmes") is a natural person who resides in Virginia and in this District and Division. Ms. Holmes is a consumer as defined by the FCRA at §1681a(c).

15.     Plaintiff Becky Nicholds ("Ms. Nicholds") is a natural person who resides in Virginia and in this District and Division. Ms. Nicholds is a consumer as defined by the FCRA at §1681a(c).

16.     Plaintiff Susan Folley ("Ms. Folley") is a natural person who resides in Virginia and in this District and Division. Ms. Folley is a consumer as defined by the FCRA at §1681a(c).

17.     Plaintiff Sam Forbes ("Mr. Forbes") is a natural person who resides in Virginia and in this District and Division. Mr. Forbes is a consumer as defined by the FCRA at §1681a(c).

18.     Plaintiff Felix Gillison, Jr. ("Mr. Gillison") is a natural person who resides in Virginia and in this District and Division. Mr. Gillison is a consumer as defined by the FCRA at §1681a(c).

19.     Plaintiff Lawrence Mwethuku ("Mr. Mwethuku") is a natural person who resides in Virginia and in this District. Mr. Mwethuku is a consumer as defined by the FCRA at §1681a(c).

20.     Plaintiff Jazmine Hayes ("Ms. Hayes") is a natural person who resides in Virginia and in this District and Division. Ms. Hayes is a consumer as defined by the FCRA at §1681a(c).

21.     Plaintiff James Hayes ("Mr. Hayes") is a natural person who resides in Virginia and in this District and Division. Mr. Hayes is a consumer as defined by the FCRA at §1681a(c).

22.     Plaintiff Cheolieces Shannon ("Mr. Shannon") is a natural person who resides in Virginia and in this District and Division. Mr. Shannon is a consumer as defined by the FCRA at §1681a(c).

23.     Plaintiff Gloria Cunningham ("Ms. Cunningham") is a natural person who resides in Virginia and in this District. Ms. Cunningham is a consumer as defined by the FCRA at §1681a(c).

24.     Plaintiff Herbert White ("Mr. White") is a natural person who resides in Virginia and in this District. Mr. White is a consumer as defined by the FCRA at §1681a(c).

25.     Plaintiff Cherile Devries ("Ms. Devries") is a natural person who resides in Virginia and in this District. Ms. Devries is a consumer as defined by the FCRA at §1681a(c).

26.     Plaintiff Allen Honesty ("Mr. Honesty") is a natural person who resides in Virginia and in this District. Mr. Honesty is a consumer as defined by the FCRA at §1681a(c).

27.     Defendant Clarity Services, Inc. ("Clarity") is a foreign corporation doing business in Virginia. Upon information and belief, Clarity is a "consumer reporting agency" as defined in 15 U.S.C. §1681(f).

28.     Upon information and belief, Clarity is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d) to third parties. Moreover, Clarity is a "user" of consumer reports as used in the FCRA.

## FACTUAL ALLEGATIONS

### *Overview of Lead Generation*

29.     Without a brick-and-mortar store, most online payday and other predatory lenders rely heavily on marketing and advertising to prey on consumers.[1]

30.     In order to find potential customers, Internet payday lenders pay companies known as "lead generators," which are businesses that collect information on potential borrowers searching for loans and then sell it to lenders.

---

[1] Most of the facts from this section are taken from the recent study published by the Pew Charitable Trust's report released in October 2014, entitled FRAUD AND ABUSE ONLINE HARMFUL PRACTICES IN INTERNET PAYDAY LENDING. (last visited November 3, 2014 at www.pewtrusts.org/~/media/Assets/2014/10/PaydayLendingReport/Fraud_and_Abuse_Online_Harmful_Practices_in_Internet_Payday_Lending.pdf)

31.     Lead generators pay high fees to several sources to acquire borrower information, including consumer reporting agencies. Often, lead generators use a non-Big 3[2] consumer reporting agency, such as Clarity, because of it does not impose the demanding verification and "permissible purpose" restrictions like the Big-3. rits lax policies and procedures which do not meaningfully attempt to limit the furnishing of consumer reports for the purposes listed in § 1681b.

32.     Lead generators primarily obtain the consumer reports to review consumers' personal financial information in order to obtain details of the consumers' lifestyle, mode of living, whether the consumer has recently applied for other subprime credit and other evidence of a vulnerability to high cost credit.

33.     In turn, lead generators then auction the consumer information to lenders who make predatory loans or to intermediary data brokers, who then re-sell the leads to such lenders.

34.     Typically, lead generators resell the same applicant's information to other companies after an exclusivity period for the "first-look buyer," who pays a higher cost for a brief exclusivity period in order to be the first lender to contact the consumer.

35.     Often times, lists—such as a list of people who have applied for payday loans—are sold and then resold by brokers, especially if a company does not wish to make a loan.

36.     Ultimately, this practice leads to instantaneous harassment and solicitation by numerous online lenders and data brokers as soon as a consumer applies for a single online loan.

37.     As part of this process, online lenders, data brokers, and lead generators also unlawfully obtain consumers' credit reports for several purposes, including to determine whether

---

[2] The "Big-3" CRAs include Equifax, TransUnion and Experian.

a consumer is still actively looking for an internet loan, whether the consumer received an internet loan, or whether the consumer may qualify or be in need of an additional loan.

38.     As reflected by the credit reports of the named Plaintiffs, this results in the improper access of a consumer's credit report by multiple entities for months, often years, after a consumer applies for a single internet loan by entities that a consumer never contacted, nor authorized to obtain their private financial details.

39.     As reflected by the credit reports of the named Plaintiffs and confirmed by other facts known to the Plaintiffs and their counsel, this same lead generator scheme as outlined in the above paragraphs was present and made available against each of the named Plaintiffs because of and by Clarity.

40.     Clarity knowingly participates in this scheme despite its knowledge of the requirements of §§ 1681b and 1681e(a). In sum, Clarity impermissibly accesses consumer reports (often on multiple occasions) from Experian without having a permissible purpose under the FCRA to collect information on consumers seeking Internet payday loans. Then, Clarity resells and provides access to this data to companies that it knew or should have known were lead generators or data brokers, often times at rapid speeds that would ordinarily serve as warnings signs of the misuse of consumer reports.

### Common Allegations as to Clarity

41.     Clarity is not a consumer reporting agency in its traditional sense, but rather it focuses its reporting on consumers who may be vulnerable to subprime consumer loans, such as internet pay day loans.

42.     Clarity holds itself out as a credit reporting agency that "provides information that is not available from traditional reporting agencies, and assists lenders in gaining a competitive advantage by viewing subprime consumer data."[3]

43.     As part of this process, Clarity permits access to its consumer database for impermissible purposes, primarily to allow its customers to identify potential payday lending opportunities and then sell the identities of those consumers as "leads".

44.     Clarity either knew or should have known that entities specifically identified below were accessing its consumer reports to generate leads.

45.     By way of example, and without limitation, Clarity could have discovered with minimal Internet research and/or an onsite visit that the following companies were lead generators: Clickspeed, Lead Express, 123 Cash Depot, Inc., and Sonic Cash.

46.     Moreover, upon information and belief, "The Servicing Company" is also a lead generator and/or a "ghost company". If a minimal investigation was conducted, Clarity would have discovered that The Servicing Company was an impermissible user of consumer reports.

47.     Hereafter, Clickspeed, Lead Express, 123 Cash Depot, Inc., Sonic Cash, and The Servicing Company are collectively referred to as the "Impermissible Users".

48.     As a consumer reporting agency focusing on subprime lending, Clarity understands the nature of lead generating and that such companies often impermissibly access consumer reports as a means of generating leads.

49.     Nevertheless, upon information and belief, Clarity did not make any attempt to investigate the Impermissible Users before allowing them to access Clarity's database.

---

[3] https://www.clarityservices.com/about.

9

Moreover, upon information and belief, Clarity did not require the Impermissible Users to certify the uses of such users prior to furnishing consumer reports to these companies.

50.  For example, upon information and belief, Clarity does not have any vetting process to verify the identity of new prospective users prior to allowing them to obtain consumer reports from its database. Instead, upon information and belief, Clarity will allow any or nearly any company to access its consumer report so long as that company is willing to pay a fee for the consumer report.

51.  Upon information and belief, Clarity does not perform basic research on its users or make reasonable efforts to visit a prospective user's business location to ensure that the prospective company is a reliable and legitimate user of Clarity's database.

52.  Upon information and belief, no investigation is performed by Clarity to determine a company's legitimacy or reliability even though Clarity knows that lead generation and mass marketing companies with no legitimate reason to obtain consumer reports frequently use Clarity's consumer reports as a means of obtaining private, financial information on consumers.

53.  In addition, Clarity regularly permits illegitimate companies to access the consumer reports of consumers dozens of times within a single hour. Where such repeated uses would ordinarily serve as warning signs of misuse of consumer reports, Clarity continued to allow unfettered access to its database without consideration of these unusual use patterns.

54.  For example, Ms. Turnage's consumer report from Clarity reflects that Clarity provided a lead generation company, Clickspeed Marking, Inc., Ms. Turnage's consumer report forty-three times, on multiple occasions within a single hour, including three times within a nine

minute span on July 20, 2012, two times within a one minute span on August 7, 2012, and even two times within seconds on August 11, 2012.

55.     Moreover, each time Clickspeed accessed Ms. Turnage's consumer report—which occurred at least 19 times in less than a month—Clickspeed entered the same "permissible" purpose code, which signified that Clickspeed's purpose for obtaining Ms. Turnage's consumer report was a "pre-check."

56.     Clarity defines this purpose as "a request to find a creditor, through a lead generator that was initiated by you."

57.     This is not one of the permissible purposes established in § 1681b(a). Moreover, given the frequent use of Clarity's database by Clickspeed and other similar entities, Clarity knew or should have known that its consumer reports were not being obtained for a permissible purpose because such conduct and the stated purposes were entirely inconsistent with the permissible purposes established in § 1681b(a).

58.     Upon information and belief, even after the frequent use of Clarity's database, it still does not investigate any of its users, nor has it ever prohibited any user from accessing its database.

59.     Moreover, given the frequent use of Clarity's database by Clickspeed and other similar entities, Clarity should have identified the repeated use of its database as a "red flag" and prohibited such companies from accessing its database. This is especially true given the known business purpose of Clickspeed and the other Impermissible Users as lead generation companies and not actual lenders engaging in credit transactions with the named Plaintiffs.

60.     Clarity acted with systematic disregard of these excessive use patterns, as reflected by the consumer reports of named Plaintiffs.

61.    In doing so, Clarity also further violated of 1681b(a), as well as § 1681e(a), which prohibits a consumer reporting agency from furnishing a consumer report if it has "reasonable grounds for believing that the consumer report will not be used for a purpose" listed in § 1681b.

62.    Moreover, in order to be more valuable to such companies, Clarity repeatedly obtains consumer reports from Experian Information Solutions, Inc. ("Experian") so that it can incorporate Experian's databases into its own records.

63.    Clarity did not have a lawful purpose to obtain and use the Plaintiffs' credit reports and the Plaintiffs never authorized Clarity to receive their credit reports.

64.    Clarity's disclosed purposes for the sale of its consumer reports - "PC" for Pre-Check and "AR" for new credit were uniformly false. Neither signified an actual existing credit "account review", new credit application specifically initiated by the consumer or a pre-approved firm offer of credit governed by the FCRA.

65.    Further, upon information and belief, because Clarity does not even know the identity of the "end-user" for which the Experian information could be used – the Internet payday lender that will ultimately purchase the data from the Impermissible User or lead generator – it did not and could possible have made the disclosures required by § 1681e(e) when it obtained for resale information from Experian.

66.    Each of the Impermissible Users, the lead generators, were themselves "reseller" consumer reporting agencies governed by the FCRA. In each instance, none of these entitles disclosed to Clarity the identity of the "end-user" to whom the Clarity data was to be resold.

*Facts as to Gloria Turnage*

67.     In April 2013, Ms. Turnage sent correspondence to Clarity requesting a copy of her consumer disclosure.

68.     On or about April 29, 2013, Clarity forwarded Ms. Turnage a copy of her consumer report.

69.     Ms. Turnage's Clarity consumer report contained forty-three inquiries from Clickspeed that were coded "PC" for Pre-Check. Some of these Clickspeed inquiries were within seconds of one another. There were also four inquires for The Servicing Company that were coded "AR" for new credit. There was one inquiry each for Lead Express and 123 Cash Depot, Inc., that were coded as "AR" for new credit even though neither of these companies are lenders. All of these inquiries were coded as "C1" or "C3" identifying an Internet payday loan and Internet unsecured loan respectively.

70.     Upon review of her report, Ms. Turnage identified inaccurate tradeline information in her Clarity consumer report.

71.     On or about October 9, 2013, Ms. Turnage sent correspondence to Clarity requesting that they remove the inaccurate information in her Clarity consumer report.

72.     In correspondence dated October 29, 2013, Clarity responded that it would not investigate her dispute and informed Ms. Turnage that it "determined your dispute is frivolous."

73.     In subsequent correspondence dated November 15, 2013, Clarity removed the inaccurate tradeline information in Ms. Turnage's Clarity consumer report.

74.     On or about February 21, 2013, Ms. Turnage obtained a copy of her Experian consumer disclosure which identified seven impermissible pulls by Clarity.

75.     At no time did Ms. Turnage receive an offer of credit from Clarity, have a credit relationship with Clarity, or give Clarity permission to obtain a copy of her credit report.

13

### *Facts as to Felix Gillison, Jr.*

76.     On or about May 9, 2014, Mr. Gillison sent correspondence to Clarity requesting a copy of his consumer report.

77.     On or about May 19, 2014, Clarity forwarded Mr. Gillison a copy of his consumer report.

78.     Mr. Gillison's Clarity consumer report contained eleven inquiries including four inquiries from Clickspeed that were coded "PC" for Pre-Check. These four Clickspeed inquiries all occurred on September 6, 2013 within seconds of one another.

79.     There was also one inquiry each for Lead Express that was coded as "AR" for new credit. All of these inquiries were coded as "C1" or "C3" identifying an internet payday loan and internet unsecured loan respectively.

### *Facts as to Polly Larimer*

80.     On or about September 27, 2014, Ms. Larimer sent correspondence to Clarity requesting a copy of her consumer report.

81.     On or about October 4, 2013, Clarity forwarded Ms. Larimer a copy of her consumer report. Clarity did not provide any documentation with her consumer report defining any of the codes to enable her to understand what was in her consumer report.

82.     Ms. Larimer's Clarity consumer report contained a Clickspeed inquiry that was coded "PC" for Pre-Check.

83.     Upon review of her report, Ms. Larimer identified inaccurate tradeline information in her Clarity consumer report.

84.     On or about December 5, 2013 Ms. Larimer sent correspondence to Clarity requesting that they remove the inaccurate information in her Clarity consumer report.

14

85.     Clarity did not respond to Ms. Larimer's correspondence.

86.     On or about September 27, 2013, Ms. Larimer obtained a copy of her Experian consumer disclosure which identified eleven impermissible pulls by Clarity.

87.     At no time did Ms. Larimer receive an offer of credit from Clarity, have a credit relationship with Clarity, or give Clarity permission to obtain a copy of her credit report.

### Facts as to Carshena Jackson

88.     On or about October 10, 2013, Ms. Jackson sent correspondence to Clarity requesting a copy of her consumer report.

89.     On or about October 21, 2013, Clarity forwarded Ms. Jackson a copy of her consumer report. Clarity did not provide any documentation with her consumer report defining any of the codes to enable her to understand what was in her consumer report.

90.     Ms. Jackson's Clarity consumer report contained one inquiry from Clickspeed that was coded "PC" for Pre-Check.

91.     Upon review of her report, Ms. Jackson identified inaccurate tradeline information in her Clarity consumer report.

92.     On or about November 4, 2013 Ms. Jackson sent correspondence to Clarity requesting that they remove the inaccurate information in her Clarity consumer report.

93.     Clarity did not respond to Ms. Jackson's correspondence.

### Facts as to Michelle Campbell

94.     On or about November 22, 2013, Ms. Campbell sent correspondence to Clarity requesting a copy of her consumer report.

95.     On or about December 4, 2013, Clarity forwarded Ms. Campbell a copy of her consumer report. Clarity did not provide any documentation with her consumer report defining any of the codes to enable her to understand what was in her consumer report.

96.     Ms. Campbell's Clarity consumer report contained thirteen inquiries from Clickspeed that were coded "PC" for Pre-Check. Some of these Clickspeed inquiries were within seconds of one another. There was also one inquiry from The Servicing Company.

97.     On or about January 11, 2014, Ms. Campbell obtained a copy of her Experian consumer disclosure which identified twelve impermissible pulls by Clarity.

98.     At no time did Ms. Campbell receive an offer of credit from Clarity, have a credit relationship with Clarity, or give Clarity permission to obtain a copy of her credit report.

### Facts as to Sharon Holmes

99.     On or about December 22, 2013, Ms. Holmes sent correspondence to Clarity requesting a copy of her consumer report.

100.    On or about December 30, 2013, Clarity forwarded Ms. Holmes a copy of her consumer report. Clarity did not provide any documentation with her consumer report defining any of the codes to enable her to understand what was in her consumer report.

### Facts as to Becky Nicholds

101.    On or about August 9, 2013, Ms. Nicholds sent correspondence to Clarity requesting a copy of her consumer report.

102.    On or about August 13, 2013, Clarity forwarded Ms. Nicholds a copy of her consumer report. Clarity did not provide any documentation with her consumer report defining any of the codes to enable her to understand what was in her consumer report.

103.   Ms. Nicholds' Clarity consumer report contained inquiries from Lead Express, Sonic Cash and The Servicing Company. The Impermissible Users listed its purpose as "AR" for new credit.

104.   On or about July 13, 2013, Ms. Nicholds obtained a copy of her Experian consumer disclosure which identified nine impermissible pulls by Clarity.

105.   At no time did Ms. Nicholds receive an offer of credit from Clarity, have a credit relationship with Clarity, or give Clarity permission to obtain a copy of her credit report.

### Facts as to Lawrence Mwethuku

106.   On or about September 6, 2013, Mr. Mwethuku sent correspondence to Clarity requesting a copy of his consumer report.

107.   On or about September 25, 2013, Clarity forwarded Mr. Mwethuku a copy of his consumer report. Clarity did not provide any documentation with his consumer report defining any of the codes to enable him to understand what was in his consumer report.

108.   Mr. Mwethuku's Clarity consumer report contained three inquiries from Clickspeed that were coded "PC" for Pre-Check and an inquiry from The Servicing Company that was coded as "AR" for new credit.

109.   On or about October 9, 2014, Mr. Mwethuku obtained a copy of his Experian consumer disclosure which identified nine impermissible pulls by Clarity.

110.   At no time did Mr. Mwethuku receive an offer of credit from Clarity, have a credit relationship with Clarity, or give Clarity permission to obtain a copy of his credit report.

### Facts as to James Hayes

111.   In September 2013, Mr. Hayes sent correspondence to Clarity requesting a copy of his consumer report.

112.   On or about September 17, 2013, Clarity forwarded Mr. Hayes a copy of his consumer report. Clarity did not provide any documentation with his consumer report defining any of the codes to enable him to understand what was in his consumer report.

113.   Mr. Hayes' Clarity consumer report contained three inquiries from Clickspeed, which were coded "PC" for Pre-Check and an inquiry from The Servicing Company that was coded as "AR" for new credit.

114.   Upon review of his report, Mr. Hayes identified inaccurate tradeline information in his Clarity consumer report.

115.   On or about October 14, 2013, Mr. Hayes sent correspondence to Clarity requesting that they remove the inaccurate information in his Clarity consumer report.

116.   In correspondence dated October 25, 2013, Clarity responded that it would not investigate his dispute and informed Mr. Hayes that it "determined your dispute is frivolous."

117.   In subsequent correspondence dated November 8, 2013, Clarity removed the inaccurate tradeline information in Mr. Hayes' Clarity consumer report.

118.   On or about October 29, 2014, Mr. Hayes obtained a copy of his Experian consumer disclosure which identified nine impermissible pulls by Clarity.

119.   At no time did Mr. Hayes receive an offer of credit from Clarity, have a credit relationship with Clarity, or give Clarity permission to obtain a copy of his credit report.

### *Facts as to Jazmine Hayes*

120.   On or about July 26, 2013, Ms. Hayes sent correspondence to Clarity requesting a copy of her consumer report.

121.    On or about August 1, 2013, Clarity forwarded Ms. Hayes a copy of her consumer report. Clarity did not provide any documentation with her consumer report defining any of the codes to enable her to understand what was in her consumer report.

122.    On or about July 25, 2013, Ms. Hayes obtained a copy of her Experian consumer disclosure which identified an impermissible pull by Clarity.

123.    At no time did Ms. Hayes receive an offer of credit from Clarity, have a credit relationship with Clarity, or give Clarity permission to obtain a copy of her credit report.

124.    On or about July 25, 2013, Ms. Hayes obtained a copy of her Experian consumer disclosure which identified an impermissible pull by Clarity.

125.    At no time did Ms. Hayes receive an offer of credit from Clarity, have a credit relationship with Clarity, or give Clarity permission to obtain a copy of her credit report.

### Facts as to Susan Folley

126.    In June 2013, Ms. Folley sent correspondence to Clarity requesting a copy of her consumer report.

127.    On or about June 21, 2013, Clarity forwarded Ms. Folley a copy of her consumer report. Clarity did not provide any documentation with her consumer report defining any of the codes to enable her to understand what was in her consumer report.

### Facts as to Samuel Forbes

128.    On or about January 13, 2014, Mr. Forbes sent correspondence to Clarity requesting a copy of his consumer report.

129.    On or about January 24, 2014, Clarity forwarded Mr. Forbes a copy of his consumer report. Clarity did not provide any documentation with his consumer report defining any of the codes to enable him to understand what was in his consumer report.

130.    Mr. Forbes' Clarity consumer report contained eighteen inquiries from Clickspeed that were coded "PC" for Pre-Check. Some of these Clickspeed inquiries were within seconds of one another. There was one inquiry for Lead Express that was coded as "AR" for new credit.

### *Facts as to Cheolieces Shannon*

131.    On or about October 3, 2013, Mr. Shannon sent correspondence to Clarity requesting a copy of his consumer report.

132.    Clarity never provided Mr. Shannon with a copy of his Clarity consumer disclosure.

133.    On or about July 1, 2013, Mr. Shannon obtained a copy of his Experian consumer disclosure which identified an impermissible pull by Clarity.

134.    At no time did Mr. Shannon receive an offer of credit from Clarity, have a credit relationship with Clarity, or give Clarity permission to obtain a copy of his credit report.

### *Facts as to Gloria Cunningham*

135.    On or about September 24, 2013, Ms. Cunningham sent correspondence to Clarity requesting a copy of her consumer report.

136.    On or about March 21, 2014, Clarity forwarded Ms. Cunningham a copy of her consumer report. Clarity did not provide any documentation with her consumer report defining any of the codes to enable her to understand what was in her consumer report.

137.    On or about May 30, 2014, Ms. Cunningham obtained a copy of her Experian consumer disclosure which identified five impermissible pulls by Clarity.

138.    At no time did Ms. Cunningham receive an offer of credit from Clarity, have a credit relationship with Clarity, or give Clarity permission to obtain a copy of her credit report.

### *Facts as to Herbert White*

139.   On or about May 2, 2014, Mr. White obtained a copy of his Experian consumer disclosure which identified thirteen impermissible pulls by Clarity.

140.   At no time did Mr. White receive an offer of credit from Clarity, have a credit relationship with Clarity, or give Clarity permission to obtain a copy of his credit report.

### Facts as to Cherile DeVries

141.   Within the past year, Ms. DeVries obtained a copy of her Experian consumer disclosure which identified impermissible pulls by Clarity.

142.   At no time did Ms. DeVries receive an offer of credit from Clarity, have a credit relationship with Clarity, or give Clarity permission to obtain a copy of her credit report.

### Facts as to Allen Honesty

143.   On or about February 18, 2014, Mr. Honesty sent correspondence to Clarity requesting a copy of his consumer report.

144.   On or about February 28, 2014, Clarity forwarded Mr. Honesty a copy of his consumer report. Clarity did not provide any documentation with his consumer report defining any of the codes to enable him to understand what was in his consumer report.

145.   Mr. Honesty's Clarity consumer report contained at least one inquiry from The Servicing Company.

146.   On or about October 29, 2014, Mr. Honesty obtained a copy of his Experian consumer disclosure which identified five impermissible pulls by Clarity.

147.   At no time did Mr. Honesty receive an offer of credit from Clarity, have a credit relationship with Clarity, or give Clarity permission to obtain a copy of his credit report.

**COUNT ONE:**
**VIOLATION OF 15 U.S.C. §§ 1681b(a) and 1681e(a)**
**CLASS CLAIM**

148.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

149.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this claim for themselves and on behalf of a class initially defined as follows (the Impermissible Sale Class):

> All natural persons residing in the United States: (a) whose consumer report was furnished by Clarity; (b) to Clickspeed, Lead Express, 123 Cash Depot, Inc., Sonic Cash, or The Servicing Company; and (c) on or after a date five years prior to the filing of this action.

> Plaintiffs Turnage, Larimer, Carshena, Forbes, Campbell, Nicholds, Gillison, Mwethuku, James Hayes, and Honesty are members of the proposed § 1681b(a) Class.

150.    **Numerosity. Fed. R. Civ. P 23(a)(1)**. Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by Defendant and the class members may be notified of the pendency of this action by published and/or mailed notice.

151.    **Predominance of Common Questions of Law and Fact**. Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues are: (a.) Whether Clarity, as a matter of common practice, furnished consumer reports to its customers for impermissible purposes as established in § 1681b; (b.) Whether Clarity's procedures required prospective users of its reports and information identify themselves and any end-user; (c.) Whether Clarity's procedures required prospective users of its reports and information to certify the purposes for which the information was sought, and certify that the information will be used for no other purpose (d.) Whether the procedure and effort made by

Clarity to verify the identity of its new prospective users and the uses certified by such prospective users prior to furnishing a consumer report were reasonable: (e.) whether the reports Clarity furnished were sold when Clarity had reasonable grounds for believing that the consumer report would not be used for a FCRA permitted purpose; (f.) whether the violation was negligent, reckless, knowing, or intentionally committed in conscious disregard of the rights of the Plaintiffs and the putative class members.

152.    **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. Plaintiffs, as well as every punitive class member, allege violations of the same FCRA provisions, 15 U.S.C. §§ 1681b(a) and 1681e(a). This claim challenges Clarity's consumer report furnishing procedures. In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

153.    **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the putative class, because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent; they have retained counsel competent and experienced in such litigation; and they have and intend to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Class. Neither Plaintiffs nor their counsel have any interests which might cause him not to vigorously pursue this action.

154.    **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome

23

and expensive. Additionally, none of the class members would have known of the facts underlying the violation or of the legal basis for this action absent this lawsuit. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

155.    Clarity violated § 1681b(a) as to the Impermissible Use Class by furnishing consumer reports to the Impermissible Users identified above when it had no reason to believe they had a permissible purpose as established by § 1681b(a), which enumerates 6 specific circumstances where a consumer reporting agency may provide a consumer report and "no other." Through its intended and/or reckless procedures, Clarity allowed and facilitated the improper access of consumers' credit reports to the Impermissible Users without a permissible purpose.

156.    Clarity violated § 1681e(a) as to the Impermissible Use Class by failing to ever use procedures reasonably maintained to require prospective users of its reports and information to identify themselves and any end-user, require prospective users of its reports and information to certify the purposes for which the information was sought, and certify that the information will be used for no other purpose, or to verify the identity of its new prospective users and the uses certified by such prospective users prior to furnishing a consumer report. Further, Clarity

24

furnished consumer reports as to each class member when it had reasonable grounds for believing that the consumer report would not be used for a FCRA permitted purpose.

157.    These ongoing intrusions were either intentional, or Clarity cared so little about the duties owed under the FCRA that its conduct was carried out with reckless disregard, which gives rise to a willful violation, rendering Clarity liable pursuant to 15 U.S.C. § 1681n. In the alternative, Clarity was negligent entitled the Plaintiffs to recover under 15 U.S.C. § 1681o.

158.    Plaintiff and the putative class members are entitled to recovery statutory damages, punitive damages, costs, and attorneys' fees from Clarity in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT TWO:**
**VIOLATION OF 15 U.S.C. §§ 1681b(f) and 1681e(e)**
**CLASS CLAIM**

159.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

160.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this claim for themselves and on behalf of a class initially defined as follows (the Impermissible Use Class):

> All natural persons residing in the United States: (a) whose consumer report information was obtained by Clarity from Experian; (b) on or after a date five years prior to the filing of this action.

> Plaintiffs Turnage, Larimer, Campbell, Nicholds, Mwethuku, James Hayes, Cunningham, White, DeVries, Honesty, and Shannon are members of the proposed § 1681b(f) Class.

161.    **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained

25

by Defendant and the class members may be notified of the pendency of this action by published and/or mailed notice.

162.   **Predominance of Common Questions of Law and Fact.** Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues are: (a.) Whether Clarity had a permissible purpose to obtain consumer reports from Experian; (b.) Whether Clarity's procedure was to disclose to Experian the identity of the end-user of the reports (or information) it resold; (c.) Whether Clarity's procedure was to disclose to Experian each permissible purpose under § 1681b(a) for which the reports (or information) its was furnished to Clarity's end-users; (d.) Whether Clarity's procedure was reasonably designed to ensure that the reports (or information) it resold were used by the end-user for a purpose permitted under § 1681b; (e.) Whether Clarity made reasonable efforts to verify the identifications and certifications made under § 1681e(e); (e.) whether the violation was negligent, reckless, knowing, or intentionally committed in conscious disregard of the rights of the Plaintiffs and the putative class members; and (c.) if Clarity's conduct was willful, what is the appropriate measure of damages.

163.   **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. Plaintiffs, as well as every punitive class member, allege violations of the same FCRA provisions. Plaintiffs are entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

164.   **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the putative class, because their interests coincide with, and are not

antagonistic to, the interests of the members of the Class they seek to represent; they have retained counsel competent and experienced in such litigation; and they have and intend to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Class. Neither Plaintiffs nor their counsel have any interests which might cause him not to vigorously pursue this action.

165.   **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant's conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

166.   At no time did the Plaintiffs or the members of the putative class receive an offer of credit from Clarity, have a credit relationship with Clarity, or give Clarity permission to obtain a copy of their consumer reports.

167.   Clarity violated § 1681b(f) as to each class member by obtaining consumer reports from Experian without a permissible purpose under the FCRA.

168.   Clarity violated§ 1681e(e) as to each class member by reselling consumer reports without compliance with the disclosure and procedure requirements in that section.

169.   These ongoing intrusions were either intentional, or Clarity cared so little about the duties owed under the FCRA that its conduct was carried out with reckless disregard, which gives rise to a willful violation, rendering Clarity liable pursuant to 15 U.S.C. § 1681n. In the alternative, Clarity was negligent entitled the Plaintiffs to recover under 15 U.S.C. § 1681o.

170.   Plaintiff and the putative class members are entitled to recovery statutory damages, punitive damages, costs, and attorneys' fees from Clarity in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT THREE:
## VIOLATION OF 15 U.S.C. § 1681g(a)
## (INDIVIDUAL CLAIM)

171.   Plaintiffs reallege and incorporate all other factual allegations set forth in the Complaint.

172.   Clarity violated 15 U.S.C. §1681g(a)(2) as to Plaintiffs Turnage, Larimer, Campbell, Nicholds, Mwethuku, Hayes, Cunningham, White, DeVries, and Honesty (collectively the "§ 1681g(a)(2) Plaintiffs") by failing to clearly and accurately disclose to the § 1681g(a)(2) Plaintiffs the sources of the information within each respective Plaintiff's file, including but not limited to the information obtained from Experian which Clarity incorporated into the § 1681g(a)(2) Plaintiffs' consumer report.

173.   Clarity violated 15 U.S.C. § 1681g(a)(1) as to Plaintiffs Larimer, Jackson, Campbell, Holmes, Nicholds, Mwethuku, James Hayes, Jazmine Hayes, Cunningham, Honesty, Folley, Forbes and Shannon (collectively the "§ 1681g(a)(1) Plaintiffs") by failing to clearly and accurately disclose to the § 1681g(a)(1) Plaintiffs the information within each respective

consumer's file, including but not limited to such failure through by use of unintelligible codes summarizing the information in the consumer's file (such as payment history or delinquent status) without providing documentation defining any of the codes to enable the consumer to understand the contents of the information in their report.

174.   As to Plaintiff Cunningham, Clarity additionally did not provide her with a copy of her consumer file until almost six months after her request.

175.   As to Plaintiff Shannon, despite his written request, Clarity never provided him with a copy of his consumer file.

176.   As a result of Clarity's violations of 15 U.S.C. §1681g(a), Plaintiffs suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental, physical and emotional distress.

177.   The violations by Clarity were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Clarity was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

178.   Plaintiffs are entitled to recover actual damages, statutory damages, costs and attorney's fees from Clarity in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT FOUR: ·
### VIOLATION OF 15 U.S.C. § 1681i
### (INDIVIDUAL CLAIM)

179.   Plaintiffs reallege and incorporate all other factual allegations set forth in the Complaint.

180.   Clarity violated § 1681i(a)(1) as to Plaintiffs Turnage, Larimer, Jackson, and James Hayes (collectively the "§ 1681i Plaintiffs") by failing to conduct a reasonable

investigation reinvestigation to determine whether the information disputed by the respective §
1681i Plaintiff was inaccurate and record the current status of the disputed information or delete
the item from the § 1681i Plaintiff's credit file.

181.   Clarity further violated 15 U.S.C. §1681i(a)(2)(A) on multiple occasions by
failing to provide the furnishers of the credit information with all the relevant information
regarding the § 1681i Plaintiffs' disputes.

182.   Clarity also violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all
relevant information submitted by § 1681i Plaintiffs and, instead, misrepresenting that their
disputes were frivolous.

183.   Clarity violated 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the
disputed inaccurate items of information from the § 1681i Plaintiffs' credit files or modify the
item of information upon a lawful reinvestigation.

184.   As a result of Clarity's violations of 15 U.S.C. §1681i, Plaintiffs suffered actual
damages, including but not limited to: loss of credit, damage to reputation, embarrassment,
humiliation and other mental, physical and emotional distress.

185.   The violations by Clarity were willful, rendering it liable for punitive damages in
an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative,
Clarity was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

186.   Plaintiffs are entitled to recover actual damages, statutory damages, costs and
attorney's fees from Clarity in an amount to be determined by the Court pursuant to 15 U.S.C. §
1681n and §1681o.

WHEREFORE, the Plaintiffs move for class certification and for judgment against the
Defendant, individually as alleged for actual and/or statutory damages and punitive damages, as

a class as alleged for statutory and punitive damages; and for attorneys' fees and costs, and such other specific or general relief the Court does find just and appropriate.

**A TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**GLORIA TURNAGE, POLLY LARIMER, CARSHENA JACKSON, SAM FORBES, MICHELLE CAMPBELL, SHARON HOLMES, BECKY NICHOLDS, SUSAN FOLLEY, FELIX GILLISON, JR., LAWRENCE MWETHUKU, JAMES HAYES, JAZMINE HAYES, CHEOLIECES SHANNON, GLORIA CUNNINGHAM, HERBERT WHITE, CHERILE DEVRIES, ALLEN HONESTY,** on behalf of themselves and all others similarly situated,

By: _____
Leonard Anthony Bennett, Esq. (VSB #37523)
Consumer Litigation Associates, P.C.
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
757-930-3660 - Telephone
Fax: 757-930-3662 - Fax
Email: lenbennett@clalegal.com

James W. Speer, (VSB# 23046)
Virginia Poverty Law Center
919 E. Main Street, Suite 610
Richmond, VA 23219
(804) 782-9430
Fax: (804) 649-0974
Email: jay@vplc.org

Kristi Cahoon Kelly, Esq. (VSB #72791)
Andrew J. Guzzo, Esq. (VSB #82170)
Kelly & Crandall PLC
4084 University Drive, Suite 202A
Fairfax, VA 22030
703-424-7572
Fax: 703-591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com

Susan Mary Rotkis, Esq. (VSB #40693)
Consumer Litigation Associates, P.C.
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
757-930-3660 - Telephone
Fax: 757-930-3662 - Fax
Email: srotkis@clalegal.com

Matthew J. Erausquin, VSB #65434
Casey S. Nash, VSB # 84261
Consumer Litigation Associates, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
(703) 273-7770 - Telephone
(888) 892-3513 - Fax
E-mail:  matt@clalegal.com
E-mail: casey@clalegal.com

*Counsel for Plaintiffs*